Todd Benoff (SBN 192983)
*Todd.Benoff@alston.com*
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

(*Additional counsel on signature page*)
*Attorneys for Plaintiff*
*Sandoz Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SANDOZ INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>AMGEN INC.,<br><br>            Defendant. | Case No. 2:22-cv-05326-RGK-JEM<br><br>[DISCOVERY MATTER: Referred to Magistrate Judge John. E. McDermott]<br><br>STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("STIPULATION" OR "ORDER") |

Plaintiff Sandoz Inc. ("Sandoz") and Defendant Amgen Inc. ("Amgen") (collectively "the Parties" and each individually is a "Party") HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

I.      **General**

A.      This Stipulation is intended to streamline production and promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

B.      To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any of this Court's Standing Orders.

C.      In the event of transfer to other courts, the Parties will treat this Stipulation as remaining in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.

D.      This Stipulation is not intended to enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. By entering into this Stipulation, the Parties do not imply that any discovery produced under the terms of this Stipulation or otherwise provided in discovery is properly discoverable or relevant or admissible in this or in any other litigation.

E.      Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive

or limit any Party's right to object to the production of any document or certain ESI, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

  F. Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to a stipulated Protective Order ("Protective Order"), all documents that are produced pursuant to discovery requests shall be produced in the manner provided herein.

  G. Protected Material: Protected Material shall refer to any information that a Party believes in good faith to be subject to federal, state, or foreign Data Protection Laws or other privacy obligations. Protected Material constitutes highly sensitive materials requiring special protection. Examples of such Data Protection Laws include, without limitation, The Health Insurance Portability and Accountability Act and the regulations thereunder (HIPAA), 45 CFR Part 160 and Subparts A and E of Part 164 (medical information); Genetic Information Non-discrimination Act of 2008 (GINA) (biometric information); The Swiss Federal Act on Data Protection of 19 June 1992 (FADP) and the Swiss Revised Federal Act on Data Protection of 25 September 2020 (Revised FADP); Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the Protection of Natural Persons with Regard to the Processing of Personal Data and on the Free Movement of Such Data (General Data Protection Regulation or GDPR).

  H. The Parties agree promptly to inform the other Party in writing concerning any technical problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden with respect to any obligation listed herein, the Parties shall promptly confer in an effort to resolve the issue.

  I. Discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. If there is a dispute concerning the scope of a Party's preservation or collection efforts, the burden is on the Receiving Parties to

fully explain their reasons for believing that additional efforts are reasonable and proportionate. In particular, before initiating discovery about preservation and collection, a Party shall confer with the other Party concerning the specific need for such discovery, including its relevance to claims and defenses, and the suitability of alternative means for obtaining the information.

## II.   Production Format – Hardcopy

At the Producing Party's discretion, hardcopy documents may be scanned as in PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business or in another logical order. While the Parties will endeavor to provide color copies of color originals, color originals may be produced in black-and-white format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color if the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original; however, categorical or wholesale requests are deemed invalid. To the extent that the Producing Party OCRs the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## III.   Production Format – Electronically Stored Information

Unless specifically addressed elsewhere in this protocol, ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1, attached hereto,

to the extent captured at the time of the collection. To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced or would be burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect, or produce such data. The Parties agree that certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata. An .opt image cross-reference file should also be provided for all TIFF images. Specifications for the load files are listed in Appendix 2.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image. While the Parties will endeavor to provide color copies of color originals, color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color if the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original; however, categorical or wholesale requests are deemed invalid.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing any confidentiality designation and text stating the document has been produced in native format should also be provided. No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable or for native spreadsheets redacted using a native redaction tool. If documents requested in native format require redactions and reasonably cannot be produced in TIFF or using a native redaction tool, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent either Party believes that native files

should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the Parties should confer in an attempt to resolve that issue.

## IV. Production – Handling Completely Non-Responsive Documents Attached to Production-Eligible Documents

In an effort to avoid unnecessary expense and burden, the Parties agree that non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

## V. Production – Receipt and Storage of Protected Material

A Party receiving any Protected Material that is provided under this Stipulation shall maintain such information in a reasonably secure and safe manner that ensures access is limited to the authorized persons, and shall further exercise the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as the recipient would use with respect to its own proprietary information.

If the recipient discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to the produced Protected Material, the Receiving Party shall:

    A.    Promptly provide written notice to Producing Party of such breach;

    B.    Investigate and make reasonable efforts to remediate the effects of the breach, and provide Producing Party with assurances that such breach shall not recur; and

    C.    Provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

  D. The Receiving Party shall promptly take all necessary corrective actions to terminate the unauthorized access and actions appropriate to correct the breach.

## VI. Production Format - Structured Data

To the extent a Party produces ESI contained in a database, the Parties will produce in a reasonably useable format (e.g., MS Excel) or meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## VII. Production Format – Social Media

ESI from social media websites (e.g., LinkedIn, Facebook, Twitter) may be produced by capturing information through "screen shots" or "screen captures," or by any other manner that displays the contents of the post.

## VIII. Production Format – Text and/or Chat Messaging

Text or chat messages may be collected forensically, through "screen shots" or "screen captures," or by any other manner that displays the contents of the message.

## IX. Production Format - Media

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives, or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.  Any document production that may contain non-public information shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION" or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable.  If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

## X. Processing and Other Specifications

  A. Bates Numbering and Confidentiality Designations: Each page of a produced image shall have a legible, unique Bates number that includes a prefix designating the producing party along with a fixed number, i.e., ABC00000001, electronically "burned"

onto the image at a location that neither obliterates nor obscures any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable), legends indicating that the document is subject to a protective order (where applicable), or redactions.

  B. Global or Horizontal Deduplication: Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing over time the hash values do not match). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

  C. Email Thread Suppression: The Parties agree that the Parties may use email thread suppression to exclude documents from production.

  D. Embedded Objects: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

  E. Compressed Files: Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

  F. Redactions: The Producing Party can redact documents for privilege or Protected Material, and for non-responsive content within a responsive document.

When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the parties (e.g., if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the Producing Party can redact in native format). The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction. For redacted items that were originally ESI, non-redacted metadata fields will be provided.

If during the course of litigation, a data subject with privacy rights pursuant to the Data Protection Laws identified herein exercises his or her right to erasure of personal data contained within the previously produced Protected Material, the Producing Party shall furnish newly redacted versions of the Protected Material within a reasonable time. The Receiving Party will promptly destroy the original version of the Protected Material and replace it with the redacted version. The Producing Party may also request that an entire document be destroyed and replaced with a slip-sheet indicating the Protected Material is subject to erasure pursuant to the applicable Data Protection Law. The Parties will confer concerning any disputes arising based on such a request.

G.  Foreign Language Documents: To the extent that documents or ESI produced contain languages other than English, the Producing Party shall produce the document or ESI in the language in which it originally exists. The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

## XI.  Identification and Collection of Documents

A.  Except as otherwise agreed upon in this Stipulation, the Parties have developed lists of records custodians, search terms, and date restrictions. The Parties have exchanged those lists and restrictions, and, as necessary, will continue to meet and confer concerning disputes concerning those lists and restrictions. The Parties agree the exchange of search terms and custodians or application of search terms to custodial documents does not relieve the Parties of their document collection and production obligations under the Federal Rules.

B. Search Methodology:

1. The Parties agree to search for and produce unique, responsive records from reasonably accessible sources of data to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody, or control of the Producing Party. The Parties acknowledge and agree that there may be certain circumstances, including but not limited to impacts of the on-going COVID-19 epidemic, that make collection of certain data overly burdensome, if not impossible, and therefore not reasonably accessible.

2. The mere fact that a document is hit or captured by the application of any search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness, and privilege shall be made by the Producing Party.

If the Parties cannot resolve any dispute regarding this section, consistent with The Sedona Conference Principles, Principle 6, the Producing Party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI.

## XII. Privilege and Privilege Logs

A. The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications to or from outside legal counsel for the Parties; (b) communications from inside counsel; (c) communications to inside counsel where inside counsel is the only recipient or is related to this litigation; (d) work product of counsel for the Parties; (e) any internal communications within a law firm; (f) any communications regarding litigation holds or preservation, collection, or review in this or any litigation; and (g) any communication or document that post-dates the filing of the complaint in this action.

B. The Parties agree that documents redacted for information other than privilege do not need to be included on the privilege log.

C. The Parties agree that, for documents withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party may, as an alternative to a traditional "document by document" privilege log, prepare a summary log containing, for each document for which privilege is asserted, an export of all or a subset of the metadata fields listed below (as agreed upon by the Parties) to the extent such information exists and was collected and has not been suppressed or redacted for privilege. The export should include, at a minimum, the following information, where available, from the top line email or document:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- NUMBER_OF_ATTACHMENTS
- CUSTODIAN(S)
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- FILEXT
- DOCTYPE
- AUTHOR
- CREATEDDATE
- HASH (MD5 OR SHA-1)
- REDACTED
- PRIVILEGED PERSON (only provided if not already identified in other metadata fields)
- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)

or such other information that is necessary to meet the parties' obligations under Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

D.  If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks further information.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

E.  Alternatively, or in conjunction with the privilege log protocol herein, the Producing Party may prepare and identify withheld documents by category through a categorical log.  The categorical log will provide the following fields:
- PARENT/MASTER DATE
- DOCTYPE
- SENDER (FROM/AUTHOR)
- RECIPIENTS (TO, CC, BCC)
- PRIV_DESCRIPTION (e.g., the category)
- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)
- DOCS_WITHHELD
- DOCS_WITHHELD_FAMILY-COMPLETE

## XIII.  Third Party Documents

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

## XIV.  No Effect on Admissibility

All objections to the admissibility of any material produced in discovery are preserved and may be asserted at any time in compliance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, this Court's Standing Orders, and any other orders issued in this action.

## XV. Confidentiality Agreement

Nothing in this Stipulation shall be deemed to limit or override any provision of the Protective Order or other order of the Court.

## XVI. Rolling Productions

The Parties understand that this Stipulation contemplates rolling productions of documents, and they acknowledge that nothing in this Stipulation waives, restricts, or eliminates the Parties' respective production obligations, the Parties' respective supplementation obligations prescribed by the Federal Rules of Civil Procedure, or the Parties' 502(d) obligations, and other obligations pursuant to the Protective Order entered in this case.

## XVII. Discovery Deficiency

If the Requesting Party has good cause to believe that the Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will follow the steps outlined in the Local Rules to resolve their dispute.

Dated: January 25, 2023

By: /s/ Todd Benoff
Todd Benoff (Bar No. 192983)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Todd.Benoff@alston.com

Natalie Clayton (Admitted *Pro Hac Vice*)
Victoria Spataro (Admitted *Pro Hac Vice*)
**ALSTON & BIRD LLP**
90 Park Ave., 15th Floor

|  |  |
|---|---|
| 1 | New York, NY 10016 |
| 2 | Telephone: (212) 210-9400 |
|   | Facsimile: (212) 210-9444 |
| 3 | Natalie.Clayton@alston.com |
|   | Victoria.spataro@alston.com |

Elizabeth Helmer (Admitted *Pro Hac Vice*)
Matthew Kent (Admitted *Pro Hac Vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Elizabeth.helmer@alston.com
Matthew.kent@alston.com

*Attorneys for Plaintiff Sandoz Inc.*

Dated: January 25, 2023

By: /s/ Joseph N. Akrotirianakis

Joseph N. Akrotirianakis (Bar No. 197971)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA  90071
Telephone: (213) 443-4355
Jakro@kslaw.com

*Attorneys for Defendant Amgen Inc.*

IT IS SO ORDERED:

Dated:  1/25/2023

_____
HON. JOHN E. MCDERMOTT
United States Magistrate Judge

14
STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

**ATTESTATION**

I hereby attest that all signatories listed above, on whose behalf this Stipulation is submitted, concur in the filing's content and have authorized the filing.

Dated: January 25, 2023

By: */s/ Todd Benoff*
Todd Benoff

# APPENDIX 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document. |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>* Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location). |

| Field Name | Example / Format | Description |
|---|---|---|
| CREATETIME | HH:MM | The time the document was created.<br><br>* Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| AUTHOR | jsmith | The author of a document from extracted metadata.<br><br>* Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |

| Field Name | Example / Format | Description |
| --- | --- | --- |
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| EMAIL CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| TIMEZONE | EST; PST | The processing time zone |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

## APPENDIX 2: LOAD FILE FORMATS

**Image Load Files**
- Every document referenced in a production image load file must have all corresponding images, text and metadata.
- The name of the image load file must mirror the name of the delivery volume and should have an .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.
- The load file must contain one line per image.
- Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image.
- Load files must not span across media.

**Metadata Load Files**
- The metadata load file must use the following delimiters: Column delimiter:
    - ASCII 020
    - Text qualifier: ASCII 254
    - New line:  ASCII 174
- Data for documents must be produced in only one data load file throughout the productions unless that document is noted as being a replacement document.
- The first record must contain the field names in the order of the data set forth in Appendix 1.
- All date/time fields must be produced in "MM/DD/YYYY HH:MM:SS AM/PM" format, null dates will be blank
- A carriage-return line-feed must be used to indicate the start of the next document. Load files must not span across media.
- The name of the metadata load file must mirror the name of the delivery volume and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).